IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| TITANURBI21, LLC, DALF ENERGY, LLC, and TITAN VAC & FLOW, LLC | § § § | |
| Plaintiffs, | § § | |
| v. | § | 2:20-CV-069-Z |
| GS OILFIELD SERVICES, LLC, et. al., | § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

This case is related to a bankruptcy proceeding. Before the Court is a Motion for Remand (ECF No. 3), filed by several, but not all, of the thirty-one named defendants. After considering the Motion, pleadings, papers, and applicable law, the Court DEFERS ruling on Defendants' Motion for Remand (ECF No. 3). However, because the Court finds the relevant factors weigh in favor of transfer, the Court hereby TRANSFERS this case *sua sponte* to the Western District of Texas, San Antonio Division as it is related to the bankruptcy case *In re DALF Energy, LLC*, Case No. 20-50369-CAG pending before the Hon. Craig A. Gargotta, United States Bankruptcy Judge.

### I.    Background

Plaintiff TitanUrbi21, LLC ("Titan") is an investment holding company that owns DALF Energy, LLC ("DALF") and Titan Vac & Flow, LLC—entities that operate oil, gas, and mineral interests. In 2015, DALF hired J.R. Scribner as an independent contractor to locate and analyze potential oil and gas investment opportunities. In 2016, Mr. Scribner contacted several of the named Defendants (also oil and gas operating entities) on behalf of DALF to purchase of oil and gas leases located in Archer, Callahan, Gray, and Shackelford Counties, Texas.

After finalizing the sales, DALF discovered it was responsible for operating allegedly worthless and non-profitable oil and gas wells, twelve of which are subject to the Texas Railroad Commission's plugging requirement ("shut-in wells"). On July 5, 2017, Plaintiffs filed a state court action against Defendants in the 223rd Judicial District Court for Gray County, Texas. While the physical land and minerals at issue are located in Gray County, the locations of the parties are mostly spread across Central and North Texas.

Plaintiffs allege that Scribner conspired with groups of Defendants to assign and transfer oil leases through misrepresentations and omissions of material fact to DALF. Plaintiffs allege that Scribner misrepresented production output of the leases. Additionally, Plaintiffs claim that the purchase agreements omitted material information regarding reservations of an overriding royalty interest. Further, because many of the leases at issue qualify as securities, Plaintiffs allege that Defendants were non-compliant with Texas and federal securities law. Plaintiffs claim Defendants failed to ensure that DALF was "well-informed" concerning its purchases as required by Texas Administrative Code section 109.13(a)(1). *See* ECF No. 1, Ex. 4.

Since filing suit, DALF accrued a debt of over $1.1 million based on the oil and gas sales at issue. Four of DALF's creditors filed suit against DALF for breach of contract. Accordingly, DALF filed a Voluntary Petition for Relief under Chapter 11 of Title 11 in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division ("Bankruptcy Court"), on February 17, 2020. This filing triggered an automatic stay on the state action pursuant to 11 U.S.C. § 362(a). DALF claims its lack of income inhibits it from paying creditors and complying with the Texas Railroad Commission's requirements for plugging shut-in wells. DALF listed its claims against Defendants in this case as its primary bankruptcy estate asset.

On March 18, 2020, Plaintiffs removed the case to this Court under 28 U.S.C. § 1452(a). ECF No. 1. On April 15, 2020, approximately half of the thirty-one Defendants filed the instant Motion for Remand. ECF No. 3.

## II.    Legal Standard

Under 28 U.S.C. § 1334(b), district courts have original (but not exclusive) jurisdiction when a case is "related to" a bankruptcy proceeding. District courts have exclusive jurisdiction over "cases under title 11" and non-exclusive jurisdiction over cases "related to cases under title 11." 28 U.S.C. § 1334(c)(1)–(2). "[T]o ascertain whether jurisdiction exists, it is necessary only to determine whether a matter is at least 'related to' the bankruptcy." *In re Zale Corp.*, 62 F.3d 746, 752 (5th Cir. 1995) (quoting *In re Wood*, 825 F.2d 90, 93 (5th Cir. 1987)) (internal marks omitted). These two categories under section 1334 are commonly called "core" and "non-core" proceedings. *See In re Morrison*, 555 F.3d 473 (5th Cir. 2009). "Core" proceedings—those under title 11— invoke powers that lie "at the core of the federal bankruptcy power." *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 71 (1982). Orders to obtain credit, turn over property, and terminate an automatic stay are classified as "core" proceedings. 28 U.S.C. § 157.

The Fifth Circuit applies a broad interpretation and holds that that a case is "related to" a bankruptcy action if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re Wood*, 825 F.2d at 93 (quoting *Pacor v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). A proceeding could conceivably have an effect on the estate being administered when "the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and . . . in any way impacts upon the handling and administration of the bankrupt estate." *In re Zale Corp.*, 62 F.3d at 752 (quoting *Pacor*, 743 F.2d at 994).

### A. Transfer Under Section 1412

Under 28 U.S.C. § 1412, "a district court may transfer a case or proceedings under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." The Fifth Circuit has not yet determined whether section 1412's language of "a case or proceeding under title 11" includes "non-core" claims that are merely "related to" Title 11 actions, or if section 1412 only applies to "core" proceedings. *See Domain Prot., LLC v. Sea Wasp, LLC*, No. 3:18-CV-01578-K, 2018 WL 5809298 (N.D. Tex. Nov. 6, 2018) (Kinkeade, J.). However, the Fifth Circuit has determined that the bankruptcy court's "related to" jurisdiction "avoid[s] the inefficiencies of piecemeal adjudication and promote[s] judicial economy by aiding in the efficient and expeditious resolution of all matters connected to the debtor's estate." *In re Zale Corp.*, 62 F.3d at 752 (quoting *In re Walker*, 51 F.3d 562, 569 (5th Cir. 1995)). Nevertheless, even if section 1412 does not apply to cases "related to" a bankruptcy proceeding, the Court may determine whether transfer is appropriate under the traditional transfer statute, 28 U.S.C. § 1404(a).

### B. Transfer Under Section 1404(a)

Under 28 U.S.C. § 1404(a), a district court has broad discretion to transfer "any civil action to any other district or division where it might have been brought" when it is "[f]or the convenience of parties and witnesses, in the interest of justice." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314 (5th Cir. 2008) (hereinafter, "*Volkswagen II*") (citing *Veba–Chemie A.G. v. M/V Getafix*, 711 F.2d 1243, 1247 (5th Cir. 1983); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981) (noting the "relaxed standards for transfer")). In most transfer cases under section 1404(a), courts examine eight private and public interest factors that "are not necessarily exhaustive or exclusive," and of which "none [alone] . . . can be said to be of dispositive weight." *Volkswagen II*, 545 F.3d at 315 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947); *Action Indus., Inc. v. U.S. Fid. & Guar.*

*Corp.*, 358 F.3d 337, 340 (5th Cir. 2004)). Therefore, "within the district court's sound discretion, exercised in light of the particular circumstances of the case . . . the court must balance the two categories of interest—private and public" to resolve whether a transfer under section 1404(a) is appropriate. *Nat'l Union Fire Ins. Co. of Pittsburgh PA v. Lauren Eng'rs & Constructors, Inc.*, 3:19-CV-1742-S, 2019 WL 6071073, at *1 (N.D. Tex. Nov. 14, 2019) (Scholer, J.) (cleaned up).

### III.    Analysis

The Court considers the transfer of a case "related to" bankruptcy proceedings by applying both (1) the *bankruptcy* transfer statute—section 1412—and (2) the *traditional* transfer statute— section 1404(a). Section 1412 applies to "core" functions of the bankruptcy court. "If section 1412 did not include related claims, then a court could only transfer cases closely related to core proceedings," which would "hamper the well-settled principle that the court in which the bankruptcy case itself is pending is the proper venue for adjudicating all related litigation." *Leal v. Bednar*, No. 3:16-CV-3424-G, 2017 WL 565176, *2 (N.D. Tex. Feb. 13, 2017) (Fish, J.) (quoting *Marquette Transp. Co. v. Trinity Marine Prod., Inc.*, No. 06-0826, 2006 WL 2349461, *4 (E.D. La. Aug. 11, 2006)).  Like other courts in this district, the Court will proceed with analysis under both statutes. *See LSREF2 Baron, LLC v. Aguilar*, No. 3:12-CV-1242-M, 2013 WL 230381, *3 (N.D. Tex. Jan. 18, 2013) (Lynn, C.J.); *Domain Prot.*, 2018 WL 5809298 at *3.

### A.    Transfer Does not Affect Subject Matter Jurisdiction

This case is at least "related to" another pending case that arises under Title 11. Here, a judgment concerning which party is responsible for DALF's liabilities would likely affect the administration of DALF's estate by the bankruptcy court. A favorable judgement entered against Defendants could alter DALF's liabilities and debts to its creditors. Accordingly, the Court has

preliminarily determined that it has subject matter jurisdiction over this action under the "related to" jurisdiction of 28 U.S.C. § 1334(b).

Defendants claim this Court is required to abstain from hearing the case because it is merely "related to" the bankruptcy proceeding and can be timely adjudicated in Texas state court. But this issue need not be adjudicated prior to a transfer under section 1412. Like this Court, the Bankruptcy Court may determine whether or not to exercise subject matter jurisdiction because "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b); *see also Domain Prot.*, 2018 WL 5809298, at \*3.

### B.  The Bankruptcy Court Should Ultimately Determine Jurisdiction

The Bankruptcy Court is best qualified to determine whether or not to exercise jurisdiction over this case. Under 28 U.S.C. § 157(b)(3), "the bankruptcy judge shall determine . . . whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11." "Because the jurisdictional question is necessarily intertwined with the pending bankruptcy proceedings, the Court finds . . . the bankruptcy court is best suited to resolve the issue of 1334 jurisdiction." *Marquette*, 2006 WL 2349461 at \*2.

As other district courts have found, section 157(b)(3) suggests that the Bankruptcy Court is best able to determine the scope of its own jurisdiction. *See e.g.*, *Consol. Lewis Inv. Corp. v. First Nat'l Bank of Jefferson Par.*, 74 B.R. 648, 651 (E.D. La. 1987) ("Although plaintiffs have asked this Court to remand this action or in the alternative, abstain, to do so would deprive the bankruptcy court of a § 157(b)(3) determination."). Thus, although the Court has preliminarily determined that Plaintiffs' state law claims fall into the "related to" category, this does not preclude the Bankruptcy Court from making the ultimate determination regarding jurisdiction. *See*

*Marquette*, 2006 WL 2349461 at *2 (holding bankruptcy court was not prevented from ruling on jurisdiction after transfer despite the transferor-district court's finding that section 1412 applied on "related to" grounds).

In sum, the Court finds that the jurisdictional issue need not be ultimately adjudicated by this Court. While this Court finds that "related to" jurisdiction applies for the purposes of transfer under section 1412, Bankruptcy Court should make the ultimate decision regarding the exercise of jurisdiction. Having addressed subject matter jurisdiction issues, the Court now turns to the transfer statutes under sections 1412 and 1404(a), respectively.

### C.   Transfer Is Appropriate Under Section 1412

This case should be transferred to the district and division where DALF's bankruptcy proceeding is pending. Under 28 U.S.C. § 1412, "a district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." Proceedings "related to" a bankruptcy case should be transferred to the district court where the bankruptcy proceedings are pending. *LSREF2 Baron*, 2013 WL 230381 at *4. Section 1412's "interest of justice" prong contains a "strong presumption that proceedings related to a bankruptcy case should be transferred to the district where the bankruptcy proceedings are pending," because transfer "would promote the efficient resolution of the bankruptcy estate by consolidating the dispute into one forum." *Id.* at *5. In determining whether transfer is appropriate, the Court also considers: (1) the location of the bankruptcy proceeding, (2) whether the interests of judicial economy would be served by the transfer, (3) the possibility of a fair trial, (4) either forum's interest in the controversy, (5) the enforceability of any judgment obtained, and (6) the plaintiff's original choice of forum. *Leal*, 2017 WL 565176 at *4.

Here, transfer to the Bankruptcy Court is in the interest of justice. First, DALF's bankruptcy proceedings are pending in the Western District of Texas, San Antonio Division. Second, transfer promotes judicial efficiency in administration of the bankruptcy estate and reduces the risk of conflicting rulings. Third, the Parties can rest assured that they will receive a fair trial, and there is no evidence to the contrary. Fourth, while the Northern District of Texas has an interest in this case because the properties at issue are located here, so too does the Western District of Texas as DALF's headquarters are located in San Antonio. Fifth, a judgment from the Bankruptcy Court will be equally as enforceable as a judgment from either this Court or the state court. Sixth, while *Plaintiffs* chose Gray County as their forum in 2017, *Plaintiffs* removed this action to federal court and seek transfer to district and division where they could have *originally* brought suit—the Western District of Texas, San Antonio Division.

Thus, balancing all factors, the Court concludes that transfer is appropriate under section 1412. In sum, the economic and efficient resolution of DALF's bankruptcy claim depends upon having the state-law claims—ones that could affect the bankruptcy proceedings—centralized in the most appropriate forum, and that forum is the Western District of Texas, San Antonio Division.

### D.  Transfer Is Appropriate Under Section 1404(a)

Transfer is also appropriate under section 1404(a). Section 1404(a) allows a district court to transfer a case "for the convenience of parties and witnesses, in the interest of justice" to "any other district or division where it might have been brought or division to which all parties have consented." 28 U.S.C. § 1404(a). The Court may transfer a case *sua sponte* and exercises broad discretion in doing so. *Volkswagen II*, at 311. First, the Court should determine if the transferee venue is one in which the case could have originally been filed. *In re Volkswagen AG*, 371 F.3d

201, 203 (5th Cir. 2004) (hereinafter, "*Volkswagen I*"). Second, the Court must then weigh eight private and public interest factors to determine if transfer is appropriate.

As explained *supra*, this case could have been brought in the Western District of Texas, San Antonio Division because "a proceeding . . . related to a case under title 11 may be commenced in the district court in which such case is pending." 28 U.S.C. § 1409(a); *see e.g.*, *Domain Prot.*, 2018 WL 5809298, at *6. In July 2017, Plaintiffs filed suit in Gray County. Then, in February 2020, they filed their suggestion of bankruptcy in the Bankruptcy Court. Under section 1412, the original state court action could have been brought in the same district and division as the bankruptcy proceeding, *i.e.*, the Western District of Texas, San Antonio Division. And other district courts have found that an action could have been brought in the same district as the bankruptcy proceeding even when the bankruptcy proceeding was filed *after* the original state action.[1] The Court concludes the threshold venue requirement of section 1404(a) transfer is met.

### 1. *Private Interest Factors*

The Court now turns to the relevant private and public interest factors. The four private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Volkswagen I*, at 203 (citing *Piper Aircraft*, 454 U.S. at n.6).

The first factor weighs in favor of transfer. While much of the physical property in dispute lies in the Northern District of Texas, evidence supporting the claims at issue (fraud, breach of

---

[1] *See Domain Prot.*, 2018 WL 5809298 (original action brought in state court in 2011, bankruptcy filed in the Eastern District of Texas in 2012); *Leal*, 2017 WL 565176 (original action brought in Dallas County in 2015, bankruptcy filed in the Eastern District of Texas in 2016); *LSREF2 Baron*, 2013 WL 230381 (original action brought in Dallas County in 2011, bankruptcy filed in the Western District of Texas in 2012); *Marquette*, 2006 WL 2349461 (original action brought in Plaquemines Parish, Louisiana in 2003, bankruptcy filed in the Northern District of Illinois in 2006).

fiduciary duty, violation of the Texas Deceptive Trade Practices Act) likely exists on paperwork such as leases and sale agreements between parties. This type of evidence is easily accessible by electronic means. It is unlikely that parties will find it more difficult to access sources of proof with the presiding court being in San Antonio than with it in Amarillo or Gray County. Given that evidence will likely be equally accessible in either venue, the Court finds that this factor is neutral.

The second factor is the availability of compulsory process to secure the attendance of witnesses. *Piper Aircraft*, 454 U.S. 235, 241 n.6. This factor weighs in favor of transfer when the compulsory process is available to secure the attendance of non-party witnesses "without substantial expense." *See Volkswagen II*, at 315–16. There is no indication that the compulsory power of the courts would be required in this case. Nevertheless, with many of the parties being from across the state of Texas, the Bankruptcy Court would likely have similar compulsory power over any non-consenting witnesses. Accordingly, this factor is neutral.

Third factor, the Court looks to the cost of attendance for willing witnesses. When analyzing this factor, the Court may only consider the convenience of the parties and witnesses and cannot afford any consideration to the convenience for counsel. *Volkswagen I*, at 206. "When the distance between an existing venue for trial of a matter and a proposed venue under section 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id*. at 204–05. "Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." *Id*. at 205.

While this factor—at worst—weighs against transfer, it is likely neutral. Transfer to San Antonio implies a move of more than 100 miles. But because the claims in the bankruptcy

proceeding are related to the pending state claims, it is likely that some of the same parties will be necessary to testify at both proceedings. Having both cases in a single forum could reduce overall travel expenses. Further, the Parties to this case appear to be spread across Texas—Amarillo, Abilene, Austin, Lubbock, Decatur, Dallas, and San Antonio—some of whom might even be closer to San Antonio. The Court concludes that this factor weighs against transfer.

The fourth factor concerns all other practical problems for an easy, expeditious, and inexpensive trial. *Volkswagen I*, at 203. This factor weighs *heavily* in favor of transfer. Rulings from this Court run the inherent risk of affecting DALF's bankruptcy proceeding. Indeed, the automatic stay placed on the case at the state court inhibits that court from making rulings or resolving that case anytime soon. And any Defendants seeking counterclaims must file proofs of claim in DALF's bankruptcy case. This would result in the Bankruptcy Court hearing the same claims and counterclaims as this Court. *See* Decl. of H. Anthony Hervol at 5, ECF No. 6, at 73. Duplicative cases only increase the practical problems that could arise from having two related cases adjudicated in two different forums. Accordingly, with the addition of this factor, the Court finds that the four private factors, on balance, weigh in favor of transfer.

### 2. *Public-Interest Factors*

The Court must also weight the relevant public interest factors. *Volkswagen II*, 545 F.3d at 315. The four public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law. *Id.*

11

The first factor, concerning administrative difficulties flowing from court congestion, weighs in favor of transfer. There is no indication that either court is particularly congested.[2] However, transfer will promote administrative efficiencies by having related cases resolved by the same court. The Court concludes that this first factor weighs in favor of transfer.

The second public interest factor is the local interest in having localized interests decided at home. *Volkswagen I*, at 203. "A local interest is demonstrated by a relevant factual connection between the events and the venue." *LeBlanc v. C.R. England, Inc.*, 961 F. Supp. 2d 819, 832–33 (N.D. Tex. 2013) (Boyle, J.) (cleaned up). The Court also considers "those actually affected—directly and indirectly—by the controversies and events giving rise to a case." *Volkswagen II*, at 318. San Antonio has a local interest in resolving and administering the bankruptcy estate of DALF—a local business headquartered in San Antonio—who will be "actually affected" by the resolution of this case. On the other hand, the Amarillo Division also has a local interest because the properties at issue are within this division. Considering all local interests, this factor is neutral.

The third public interest factor is the Court's familiarity with the law that will govern the case. *Volkswagen I*, at 203. Although both the Northern District of Texas and the Western District of Texas have similar familiarity with the applicable law, the addition of bankruptcy proceedings pushes this case in favor of transfer. Additionally, because Defendants intend to seek mandatory or permissive abstention by the Bankruptcy Court, those issues are better determined by the Bankruptcy Court. *See Leal*, 2017 WL 565176 at *4. Abstention analysis requires a balancing of factors that includes the burden on the Bankruptcy Court's docket. *Id.*

---

[2] Overall, the two districts appear similarly situated with regards to court congestion, and either forum could provide timely adjudication. U.S. District Courts—Federal Court Management Statistics—Comparison Within Circuit—During the 12-Month Period Ending March 31, 2020, U.S. Courts, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison0331.2020.pdf (last visited August 26, 2020).

Moreover, the Bankruptcy Court's expertise in determining its own jurisdiction and whether particular proceedings are "related to" the administration of a bankruptcy estate make this factor weigh in favor of transfer. The Honorable United States Bankruptcy Judge Craig A. Gargotta presides over DALF's bankruptcy case and has previously dealt with cases involving the Texas Securities Act and fraud claims as well as myriad oil and gas cases. *See, e.g.*, *In re Primera Energy, LLC*, No. 15-51396-CAG, 2018 WL 1569222 (Bankr. W.D. Tex. Mar. 29, 2018). Judge Gargotta is well-qualified to handle this case as an expert in bankruptcy cases. Accordingly, the Court concludes that this factor weighs *heaviest* in favor of transfer.

Lastly, Court considers the fourth public interest factor—avoidance of unnecessary problems of conflict of laws or in the application of foreign law. Here, a transfer in this case would not implicate any issue regarding the applicable law. Thus, the Court finds this factor is neutral.

Upon balancing the eight private and public interest factors, the Court concludes that the Western District of Texas, San Antonio Division is "clearly a more convenient venue" and a transfer is "in the interest of justice." 28 U.S.C. § 1404(a). Accordingly, the Court finds that's this case should be transferred for adjudication by the Bankruptcy Court.

### IV.    Conclusion

For the reasons stated above, the Court hereby ORDERS this case **TRANSFERRED** to the Western District of Texas, San Antonio Division. 28 U.S.C. § 124(d)(4). It is further ORDERED that Plaintiffs' Application for Pro Hac Vice (ECF No. 4) is DENIED both as moot and for lacking local counsel. N.D. TEX. CIV. R. 83.10(a).

**SO ORDERED.**

August 27, 2020

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE